FILED

1  CHAVEZ & GERTLER, L.L.P.
   Mark A. Chavez (CA SBN 90858)
2  Nance F. Becker (CA SBN 99292)
   Dan Gildor (CA SBN 223027)
3  42 Miller Avenue
   Mill Valley, California 94941
4  Tel:     (415) 381-5599
   Fax:     (415) 381-5572
5  E-mail:  mark@chavezgertler.com
            nance@chavezgertler.com
6           dgildor@chavezgertler.com

7  RODDY KLEIN & RYAN
   Gary Klein (To be admitted Pro Hac Vice)
8  Shennan Kavanagh (To be admitted Pro Hac Vice)
   727 Atlantic Avenue
9  Boston, MA  02111-2810
   Tel:     (617) 357-5500, ext. 15
10 Fax:     (617) 357-5030

11 [*Additional counsel listed on signature page*]

12 Attorneys for Plaintiffs
13 and the Proposed Class

14                 UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

**EDL**

17 | ANA RAMIREZ and ISMAEL RAMIREZ, on ) Case No.
   | behalf of themselves and all others similarly )
18 | situated,                                    ) **COMPLAINT FOR:**
                                                  )
19 |                                              ) **1. Violations of the Equal Credit
   |          Plaintiffs,                         )    Opportunity Act; 15 U.S.C.
20 |                                              )    § 1691**
                                                  )
21 |          vs.                                 ) **2. Violations of the Fair Housing
                                                  )    Act; 42 U.S.C. § 3601**
22 |                                              ) **3. Violations of the Civil Rights
   | GREENPOINT MORTGAGE FUNDING,                 )    Act, 42 U.S.C. §1981; and**
23 | INC.,                                        ) **4. Violations of the Civil Rights
                                                  )    Act, 42 U.S.C. §1982.**
24 |                                             ))
   |          Defendant.                          ) **CLASS ACTION**
25 |                                              )
                                                  )
26 |                                              ) **JURY TRIAL DEMANDED**
                                                  )
27 |_____)

28                                      ORIGINAL

CLASS ACTION COMPLAINT

Plaintiffs, Ana Ramirez and Ismael Ramirez (the "Ramirezes" or "Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege as follows:

## INTRODUCTION

1.      This is a class action brought by Plaintiffs, on behalf of themselves and other similarly situated minority homeowners, against GREENPOINT Mortgage Funding, Inc. ("GREENPOINT") under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA") and the Fair Housing Act, 42 U.S.C. § 3601 et seq. Plaintiffs seek remedies for themselves and the Class (defined in ¶10, below) for the discriminatory effects of the Defendants' home financing policies and practices.

2.      As described below, GREENPOINT has established a specific, identifiable and uniform credit pricing system, a component of which, referred to herein as the Discretionary Pricing Policy, authorizes unchecked, subjective surcharge of additional points and fees to an otherwise objective risk-based financing rate. In other words, after a finance rate acceptable to GREENPOINT is determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios), GREENPOINT's credit pricing policy authorizes additional discretionary financing charges and interest rate mark-ups. These subjective, additional finance charges have a widespread discriminatory impact on minority applicants for home mortgage loans, in violation of ECOA and the FHA.

3.      GREENPOINT has established policies for retail and wholesale access to its loan products that subject minority financing applicants to a significantly higher likelihood of exposure to discretionary points, fees and interest rate mark-ups. These costs drive up the average cost of a mortgage loan made by GREENPOINT to minority applicants.

4.      Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution of monies disparately obtained from minority borrowers.

## JURISDICTION AND VENUE

5.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law.

-1-

CLASS ACTION COMPLAINT

1    6.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial

2  part of the events giving rise to Plaintiffs' and the Class's claims occurred in this District,

3  because Defendant is headquartered in this District, and because Defendant regularly conducts

4  business in this District.

5                          **INTRADISTRICT ASSIGNMENT**

6    7.    Intradistrict assignment pursuant to Local Rule 3-2(c) is proper in the San

7  Francisco Division as this action arises in San Francisco County and the surrounding counties as

8  Defendant regularly conducts business in this District and is headquartered in Sonoma County.

9                                  **PARTIES**

10    8.    Plaintiffs Ana and Ismael Ramirez are minority homeowners who reside at 46

11  Stellman Road, Roslindale, Massachusetts 02131.

12    9.    Defendant, GREENPOINT Mortgage Funding, Inc. ("GREENPOINT")

13  originated sub-prime mortgage loans for approximately 20 years before closing its residential

14  loan business on August 20, 2007.  GREENPOINT is headquartered 100 Wood Hollow Drive,

15  Novato, California, 94945.

16                                  **FACTS**

17  **I.    MORTGAGE LENDING IN THE UNITED STATES HAS HISTORICALLY**

18       **DISCRIMINATED AGAINST MINORITIES**

19    10.    According to the Joint Center for Housing Studies at Harvard University's 2005

20  study called "The Dual Mortgage Market: The Persistence of Discrimination in Mortgage

21  Lending," mortgage lending discrimination today is subtle but pervasive, with minority

22  consumers continuing to have less-than-equal access to loans at the best price and on the best

23  terms that their credit history, income, and other individual financial considerations merit more

24  than three decades after the enactment of national fair lending legislation.

25    11.    The passage of civil rights legislation and fair lending laws in the 1960s and

26  1970s brought an end to the most virulent forms of overt racial discrimination in the housing

27  markets, but throughout the 1980s and 1990s, mortgage lenders found more subtle ways to

28  discriminate, including maintaining offices only in white neighborhoods and engaging in

-2-

CLASS ACTION COMPLAINT

1   practices such as redlining (refusing to lend on properties in predominantly minority
2   neighborhoods).

3       12.    After such redlining practices were challenged in the 1990s, mortgage lenders
4   changed tactics once again, making loans to minorities, but charging higher interest rates and
5   loan-related fees than they charged to similarly-situated white borrowers.  Loan data that
6   mortgage lenders must now compile and disclose under the federal Home Mortgage Disclosure
7   Act ("HMDA") reveals profound loan pricing disparities between minority borrowers and
8   similarly-situated white borrowers.

9       13.    The HMDA requires mortgage lenders to report information about the home loans
10  they process each year.  In 2005, lenders reported information on more than 30 million home
11  loan applications pursuant to HMDA.  In 1989, Congress required lenders to begin disclosing
12  information about mortgage borrowers' race and ethnicity.  In 2004, concerned with potential
13  racial discrimination in loan pricing and recognizing that racial or other types of discrimination
14  can occur when loan officers and mortgage brokers have latitude in setting interest rates, the
15  Federal Reserve Board began requiring lenders to also report information concerning rates,
16  points, and fees, charged to borrowers on high-cost loans.

17      14.    According to the Federal Reserve, both 2004 and 2005 HMDA data revealed that
18  "Blacks and minority borrowers were more likely . . . to have received higher-priced loans than
19  non-minority whites. . . . [which has] increased concern about the fairness of the lending
20  process."  Robert B. Avery, Kenneth P. Brevoort and Glenn B. Canner, "Higher-Priced Home
21  Lending and the 2005 HMDA Data," Federal Reserve Bulletin, A124, A159 (revised Sept. 18,
22  2006) (http://www.federalreserve.gov/pubs/bulletin/2006/hmda/bull06hmda.pdf (last viewed
23  December 19, 2007).)

24      15.    HMDA data for 2004 reveals profound loan pricing disparities between minority
25  borrowers and non-minority whites even after controlling for borrowers' gender, income,
26  property location, and loan amount.  After accounting for those differences in the 2004 HMDA
27  data, minority borrowers were still almost twice as likely to receive a higher-rate home loan as
28  non-minority whites.  (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last

-3-

CLASS ACTION COMPLAINT

1  viewed December 19, 2007).) In a speech last year, the Vice-Chairman of the Federal Deposit

2  Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and observed that

3  that data "clearly indicated" that minority borrowers are more likely to receive high-cost home

4  loans than are non-minority whites. (http://www.fdic.gov/news/news/speeches/archives/

5  2006/chairman/spoct1806.html (last viewed December 19, 2007).)

6      16.    Likewise, HMDA data for 2005 shows that "for conventional home-purchase

7  loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2

8  percent for non-minority whites, a difference of 37.5 percentage points." Avery, supra, at A159.

9  The situation is similar for refinancings, where there is a difference of 28.3 percentage points

10 between blacks and non-minority whites. Id. at A124, A159.

11     17.    The Association of Community Organizations for Reform Now (ACORN)

12 released a report entitled "The High Cost of Credit: Disparities in High-priced Refinanced Loans

13 to minority Homeowners in 125 American Cities," dated September 27, 2005, that found that

14 "[i]n every metropolitan area where at least 50 refinances were made to African-American

15 homeowners, African-Americans were more likely to receive a high-cost loan than White

16 homeowners."

17     18.    A growing number of research studies and investigations show that significant

18 racial disparities still exist. California Reinvestment Coalition, et al., "Paying More for the

19 American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending" (March

20 2007) (http://www.nedap.org/pressroom/documents/2007_Report-2005_HMDA.pdf (last viewed

21 December 19, 2007); Ross, "The Continuing Practice and Impact of Discrimination" (Revised

22 July 2006) (Univ. of Connecticut, Working Paper 2005-19R) (http://www.econ.uconn.edu/

23 working/2005-19r.pdf) (last viewed December 19, 2007).

24     19.    Moreover, and importantly, research studies have suggested that borrowers' credit

25 profiles cannot fully explain why some borrowers, and not others, are saddled with higher cost

26 loans. Researchers have raised "doubts that risk can adequately explain racial differences" in

27 high-cost loans. Bradford, Center for Community Change, "Risk or Race? Racial Disparities and

28 the Subprime Refinance Market" (May 2002) (http://www.knowledgeplex.org/kp/report/

-4-

CLASS ACTION COMPLAINT

1 | report/relfiles/ccc_0729_risk.pdf) (last viewed December 19, 2007). In other words, evidence
2 | "suggests that weak borrower credit profiles do not fully explain why some borrowers get stuck
3 | with higher-cost home loans." California Reinvestment Coalition, et al., "Paying More for the
4 | American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending" (March
5 | 2007).

6 | **II.    GREENPOINT'S DISCRETIONARY PRICING POLICY CONTINUES THE**
7 | **PERVASIVE DISCRIMINATION AGAINST MINORITIES IN MORTGAGE**
8 | **LENDING**

9 | 20.    For approximately 20 years, GREENPOINT publicly promoted its home
10 | financing expertise by means of nationwide advertising campaigns. In its advertisements,
11 | GREENPOINT solicited persons to apply for financing with GREENPOINT either in one of its
12 | offices or through one of the mortgage brokers whom GREENPOINT had authorized to accept
13 | applications on its behalf.

14 | 21.    GREENPOINT made home-mortgage loans directly to consumers through its
15 | branches in several markets.

16 | 22.    GREENPOINT also made home-mortgage loans that were arranged by its
17 | network of mortgage brokers. Those loans were made in reliance on GREENPOINT's credit-
18 | granting policies and with GREENPOINT's participation.

19 | 23.    Due to GREENPOINT's policies as to where to place its offices and how to
20 | market its products, minority borrowers were more likely than white borrowers to apply for
21 | credit from GREENPOINT by an application made to an authorized broker rather than one made
22 | directly to GREENPOINT.

23 | 24.    Because of the Discretionary Pricing Policy, loans obtained through
24 | GREENPOINT's network of brokers are more expensive to minority homeowners, on average,
25 | than loans obtained directly from GREENPOINT.

26 | 25.    A high-APR loan is a loan whose APR is at least three percentage points higher
27 | than the interest rate on U.S. Treasury securities of the same maturity, at the time the loan was
28 | made.

-5-

1    26.    Based on Home Mortgage Disclosure Act ("HMDA") data from the Department

2  of Housing and Urban Development, minorities who borrowed from GREENPOINT between

3  2004 and 2006 are almost 50% more likely than white borrowers to have received a high-APR

4  loan to purchase or refinance their home.

5    27.    While credit differences may explain some part of the disparities in rate and

6  terms, GREENPOINT's Discretionary Pricing Policy accounts for a significant portion of the

7  disparity.

8    28.    GREENPOINT's Discretionary Pricing Policy is unrelated to a borrower's

9  objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-

10 to-value ratios and results in charges that are determined on a purely subjective basis and that

11 adversely affect the rate otherwise available to borrowers.

12    29.    GREENPOINT provided authorized mortgage brokers with substantial

13 information about its loan programs, rates and credit criteria, as well as its policies for

14 compensating mortgage brokers and correspondent lenders who arrange business for it.

15    30.    GREENPOINT authorized mortgage brokers who have signed a contract with it

16 to accept applications on its behalf, quote financing rates and terms for loans from it (within the

17 limitations set by GREENPOINT), inform credit applicants of GREENPOINT's financing

18 options and to originate finance transactions using GREENPOINT's forms, in accordance with

19 its policies.

20    31.    In all of the home mortgage finance transactions at issue, GREENPOINT

21 advanced the funds to make the loans and bears some or all of the risk of default.

22 GREENPOINT provided its loan officers and brokers with credit applications, loan contracts and

23 other required financing forms, as well as instructions on filling out such documents necessary to

24 complete home mortgage transactions.

25    32.    After a customer provided credit information to one of GREENPOINT's loan

26 officers or brokers, GREENPOINT computed a financing rate through an objective credit

27 analysis that, in general, discerned the creditworthiness of the customer.

28

-6-

1    33.    These credit analyses considered numerous risk-related variables of
2  creditworthiness, including credit bureau histories, payment amounts, debt-to-asset ratio,
3  bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit
4  score, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables.
5  On information and belief, GREENPOINT used these variables to determine a "mortgage score"
6  for each credit applicant.

7    34.    Based on these objective risk-related variables and the resulting mortgage score,
8  GREENPOINT derived a risk-based financing rate at which it would provide a home mortgage,
9  often called the "Par Rate." Alternatively, experienced GREENPOINT loan officers, brokers
10  and correspondent lenders could estimate the risk-related Par Rate by referring to the applicant's
11  credit bureau determined credit score.

12    35.    Although GREENPOINT's initial analysis applied objective criteria to calculate
13  this risk-related Par Rate, GREENPOINT then authorized a subjective component in its credit
14  pricing system—the Discretionary Pricing Policy—to impose additional non-risk-related
15  charges. On information and belief, GREENPOINT communicated the applicable Par Rates and
16  authorized discretionary charges to its loan officers and brokers via regularly published "rate
17  sheets." GREENPOINT published such rate sheets via intranet and internet means.

18    36.    The discretionary charges are paid by the customer as a component of the total
19  finance charge (the "Contract APR"), without the homeowner knowing that a portion of their
20  Contract APR was a non-risk-related charge.

21    37.    Loan officers and brokers had discretion, within the limits set by GREENPOINT,
22  to impose discretionary mark-ups as additional points in interest–"a rate mark-up." When there
23  was a rate mark-up, GREENPOINT shared the additional income, even if a broker originated the
24  loan.

25    38.    GREENPOINT's Discretionary Pricing Policy, by design, causes persons with
26  identical or similar credit scores to pay different amounts for the cost of credit. As a result of
27  using a subjective pricing component that is designed to charge persons with the same credit
28  profiles different amounts of finance charge, the objective qualities of the initial credit analysis

-7-

CLASS ACTION COMPLAINT

1 | used to calculate the Par Rate are undermined and the potential for race bias becomes inherent in
2 | the transaction.

3 | 39. The Discretionary Pricing Policy, although facially neutral (insofar as
4 | GREENPOINT uses the same or effectively the same policy for all credit applicants), has a
5 | disproportionately adverse effect on minority borrowers compared to similarly situated whites in
6 | that minority borrowers pay disparately more discretionary charges (both in frequency and
7 | amount) than similarly situated whites. Statistical analysis of discretionary charges imposed on
8 | minority and white customers of other mortgage companies that use credit pricing systems
9 | structured like that of GREENPOINT has revealed that minority borrowers, after controlling for
10 | credit risk, are substantially more likely than similarly situated whites to pay such charges.

11 | 40. Loan officers and brokers were agents of GREENPOINT for the purpose of
12 | setting credit price, which was always set based on GREENPOINT's policy.

13 | 41. The disparate impact suffered by minority borrowers is a direct result of
14 | GREENPOINT's Discretionary Pricing Policy in that GREENPOINT designed, disseminated,
15 | controlled, implemented and profited from the Discretionary Pricing Policy creating the disparate
16 | impact.

17 | 42. GREENPOINT has a non-delegable duty to ensure that its mortgage financing
18 | structure and policies do not have a disparate impact on legally protected classes, such as
19 | minority borrowers. Despite having such a non-delegable duty, GREENPOINT has chosen to
20 | use a commission-driven, subjective pricing policy that it knows or should have known has a
21 | significant and pervasive adverse impact on minority homeowners.

22 | 43. The disparities between the terms of GREENPOINT's transactions involving
23 | minority homeowners and the terms involving white homeowners cannot be a product of chance
24 | and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of
25 | the use of the discriminatory Discretionary Pricing Policy.

26 | 44. There are no legitimate business reasons justifying GREENPOINT's
27 | discriminatory Discretionary Pricing Policy that could not be achieved by a policy that has no
28 | discriminatory impact or a greatly reduced discriminatory impact.

-8-

CLASS ACTION COMPLAINT

1      45.    Commission-driven, discretionary pricing systems–such as those in the real estate

2 mortgage industry that are structurally similar to the system utilized by GREENPOINT–have

3 been found to produce significant discriminatory effects.  Knowledge concerning the significant

4 and pervasive discriminatory impact of such commission-driven, discretionary credit pricing

5 systems has been widely circulated throughout the financing industry for several years,

6 particularly since 1994, as a result of numerous high profile actions by the United States

7 Department of Justice and federal regulatory agencies.  GREENPOINT has known or should

8 have known that its credit pricing system causes minority borrowers to pay the Defendant more

9 for mortgage financing than the amounts paid by white customers with identical or effectively

10 identical credit scores.  The following various regulatory settlements involved discriminatory

11 pricing policies structurally similar to GREENPOINT's pricing policy and were widely reported

12 through the financing industry:

13     United States v. Hispanicpipe State Bank, Civ. Act. No. 93-5115 (D. S.D. filed
    November 16, 1993)(charging American Indians higher interest rates)

14

15     United States v. First National Bank of Vicksburg, No. 5:94 CV 6(B)(N) (S.D. Miss.
    filed Jan. 21, 1994) (charging African-Americans higher interest rates)

16     United States v. Huntington Mortgage Co., No. 1; 95 CV 2211 (N.D. Ohio filed
    October 18, 1995)(charging African-Americans higher fees)

17

18     United States v. Security State Bank of Pecos, No. SA 95 CA 0996 (W.D.Tex. filed
    October 15, 1995)(charging minority borrowers higher interest rates)

19     United States v. First National Bank of Gordon, No. CIV-96-5035 (W.D.S.D. filed
    April 15, 1996)(charging American Indians higher interest rates)

20

21     United States v. Fleet Mortgage Corp., No. 96-2279 (E.D.N.Y. filed May 7,
    1996)(charging African-Americans and minority borrowers higher interest rates)

22     United States v. Long Beach Mortgage Co., No. CV-96-6159 (C.D. Cal. filed Sept. 5,
    1996)(charging African-Americans, Latinos, women and persons over age 55 higher

23     interest rates)

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

-9-

## III.    GREENPOINT'S DISCRETIONARY PRICING POLICY DISCRIMATED AGAINST PLAINTIFFS

46.    The Ramirezes reside at 46 Stellman Road, Roslindale, Massachusetts 02131.

47.    In 2005, the Ramirezes sought to refinance their existing home loan to obtain cash and to do construction on their home.

48.    The Ramirezes' former real estate broker, Ms. Santana, referred them to First Call Mortgage Company, Inc. ("First Call") a mortgage broker.

49.    First Call did not explain to the Ramirezes that it is mortgage broker. In its initial correspondences with the Ramirezes, First Call referred to the broker handling their loan, Kathy Objio ("Ms. Objio"), as a "loan officer." The Ramirezes believed that First Call was the lender.

50.    Ms. Objio told the Ramirezes that she could refinance their existing loan with a loan that would be fixed for two years at 2.000%. She also promised the Ramirezes that she could refinance them after the two-year fixed rate period expired.

51.    On August 3, 2005, the Ramirezes entered into a mortgage transaction with GREENPOINT as lender and First Call as broker.

52.    The loan contained a 2.000% one-month "teaser rate" that was set to adjust upwards only immediately as of October 1, 2005 and could potentially reset every month thereafter. The cap on the interest rate is 12.000%.

53.    The loan has a 30-year term and a disclosed APR of 6.191%. The loan amount was $469,000.00.

54.    According to the HUD-One Settlement Statement, First Call was paid a $5,276.25 Yield Spread Premium, $4,690.00 in Broker Points, and a $500.00 Processing Fee.

55.    A true and correct copy of the Ramirezes' Truth-in-Lending disclosure provided is attached hereto and labeled Exhibit 1.

56.    At the time of the transaction, based on their credit scores, the Ramirezes would have qualified with many lenders for a mortgage in the prime-market with limited points and fees. Instead, the Ramirezes received a mortgage with points, fees and charges consistent with a sub-prime loan.

-10-

CLASS ACTION COMPLAINT

1    57.    On information and belief, unbeknownst to the Ramirezes, the contract APR on

2  the mortgage loans was actually a combination of an objective, risk-based calculation and a

3  totally subjective, discretionary component paid to First Call pursuant to GREENPOINT's

4  Discretionary Pricing Policy.

5    58.    On information and belief, the Ramirezes were subject to GREENPOINT's

6  Discretionary Pricing Policy.

7    59.    On information and belief, the Ramirezes were charged a disproportionately

8  greater amount in non-risk-related credit charges than similarly situated white persons.

9                    **CLASS ACTION ALLEGATIONS**

10    60.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

11    61.    This class action is brought pursuant to ECOA and the FHA by the individual

12  named Plaintiffs on behalf of themselves and all minority consumers (the "Class") who obtained

13  a GREENPOINT home mortgage loan in the United States between January 1, 2001 and the date

14  of judgment in this action (the "Class Period") and who were subject to GREENPOINT's

15  Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest

16  rate mark-ups in connection with their loan. For the purposes of this Complaint, the term

17  "minority" is intended to include black and Hispanic consumers.

18    62.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules

19  23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

20    63.    "Discretionary Pricing Policy" means GREENPOINT's policy of authorizing its

21  loan officers, brokers and correspondent lenders to impose subjective, discretionary charges and

22  interest rate mark-ups that are included in the loans they originate.

23    64.    Plaintiffs do not know the exact size or identities of the proposed Class, since

24  such information is in the exclusive control of GREENPOINT. Plaintiffs believe that the Class

25  encompasses many thousands or tens of thousands of individuals who are geographically

26  dispersed throughout the United States. Therefore, the proposed class is so numerous that

27  joinder of all members is impracticable.

28

-11-

CLASS ACTION COMPLAINT

1    65.    All members of the Class have been subject to and affected by the same

2  Discretionary Pricing Policy. There are questions of law and fact that are common to the Class,

3  and predominate over any questions affecting only individual members of the Class. These

4  questions include, but are not limited to the following:

5           a.    the nature, scope and operations of GREENPOINT's Discretionary

6                 Pricing Policy;

7           b.    whether GREENPOINT is a creditor under the ECOA because, for

8                 example, in the ordinary course of its business it participates in the

9                 decision of whether or not to extend credit to consumers;

10          c.    whether GREENPOINT's Discretionary Pricing Policy is a facially neutral

11                credit pricing system that has effected racial discrimination in violation of

12                ECOA;

13          d.    whether there are statistically significant disparities between the amount of

14                the discretionary charges imposed on minority persons and the amount of

15                the discretionary charges imposed on white persons that are unrelated to

16                creditworthiness;

17          e.    whether there are any legitimate business reasons for the Discretionary

18                Pricing Policy, and if so, whether they can be achieved by a credit pricing

19                system less discriminatory in its impact;

20          f.    whether the Court can enter declaratory and injunctive relief; and

21          g.    the proper measure of disgorgement or damages.

22   66.    The claims of the individual named Plaintiffs are typical of the claims of the Class

23  and do not conflict with the interests of any other members of the Class in that both the Plaintiffs

24  and the other members of the Class were subject to the same Discretionary Pricing Policy that

25  has disproportionately affected minority homeowners.

26  / / /

27  / / /

28  / / /

-12-

1    67.    The individual named Plaintiffs will fairly and adequately represent the interests

2  of the Class. They are committed to the vigorous prosecution of the Class' claims and have

3  retained attorneys who are qualified to pursue this litigation and have experience in class

4  actions–in particular, consumer protection and discrimination actions.

5    68.    A class action is superior to other methods for the fast and efficient adjudication

6  of this controversy. A class action regarding the issues in this case does not create any problems

7  of manageability.

8    69.    In the alternative, GREENPOINT has acted or refused to act on grounds generally

9  applicable to the class, thereby making appropriate final injunctive relief or corresponding

10  declaratory relief with respect to the class as a whole.

11                                **COUNT ONE**

12  **DISCRIMINATION IN VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**

13                            **(15 U.S.C. §§ 1691 - 1691f)**

14    70.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

15    71.    ECOA makes it "unlawful for any creditor to discriminate against any application,

16  with respect to any aspect of a credit transaction—(1) on the basis of race, color, religion,

17  national origin, sex or marital status, or age." 28 U.S.C. § 1691(a).

18    72.    GREENPOINT is a creditor as set forth in the ECOA because in the ordinary

19  course of its business, GREENPOINT participated in the decision to extend credit to Plaintiffs,

20  the proposed Class representative herein, and all prospective Class members. 28 U.S.C.

21  § 1691a(e). Moreover, GREENPOINT is a creditor as set forth in the ECOA because it set the

22  terms of the credit that was extended to Plaintiffs, the proposed Class representative herein, and

23  all prospective Class members through its Discretionary Pricing Policy. 12 C.F.R. § 202.2(*l*)

24  (defining "creditor" under ECOA as one who "participates in a credit decision, including setting

25  the terms of the credit").

26  / / /

27  / / /

28  / / /

-13-

1    73.    GREENPOINT designed, disseminated, controlled, implemented and profited

2  from the discriminatory policy and practice alleged herein—the Discretionary Pricing Policy—

3  which has had a disparate economic impact on minority borrowers compared to similarly

4  situated whites.

5    74.    All actions taken by the GREENPOINT loan officers and brokers were in

6  accordance with the specific authority granted to them by GREENPOINT and were in

7  furtherance of GREENPOINT's policies and practices.

8    75.    As a result of GREENPOINT's Discretionary Pricing Policy, GREENPOINT has

9  collected more in finance charges from minority borrowers than from similarly situated white

10  persons, for reasons totally unrelated to credit risk.

11    76.    GREENPOINT's Discretionary Pricing Policy violates the Equal Credit

12  Opportunity Act.

13    77.    Plaintiffs and prospective class members are aggrieved persons as defined in

14  ECOA by virtue of having been subject to GREENPOINT's discriminatory Discretionary

15  Pricing Policy.

16                                        **COUNT TWO**

17              **DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT**

18                                 **(42 U.S.C. §§ 3601 – 3619)**

19    78.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

20    79.    The Fair Housing Act makes it unlawful to discriminate against any person in

21  residential real estate-related transactions such as the making or purchasing of loans or providing

22  other financial assistance. 42 U.S.C. § 3605.

23    80.    GREENPOINT engaged in residential real estate-related transactions with respect

24  to the Plaintiffs, the proposed Class representative herein, and all prospective Class members, by

25  extending credit to Plaintiffs and all prospective Class members.

26    81.    GREENPOINT's Discretionary Pricing Policy has resulted in discrimination with

27  respect to the Plaintiffs, the proposed Class representative herein, and all prospective members of

28  the Class.

-14-

1    82.    As a result of GREENPOINT's Discretionary Pricing Policy, GREENPOINT has
2  collected more in finance charges from minority borrowers than from similarly situated white
3  persons, for reasons totally unrelated to credit risk.

4    83.    GREENPOINT's Discretionary Pricing Policy violates the Fair Housing Act and
5  constitutes actionable discrimination on the basis of race.

6    84.    Plaintiffs and the Class are aggrieved persons as defined in FHA by virtue of
7  having been subject to GREENPOINT's discriminatory Discretionary Pricing Policy.

8                              **COUNT THREE**

9    **RACIAL DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT**

10                            **(42 U.S.C. § 1981)**

11   85.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

12   86.    42 U.S.C. section 1981 provides that all persons within the United Sates "shall
13 have the same right in every State to make and enforce contracts . . . as is enjoyed by white
14 citizens."

15   87.    Defendant has violated section 1981 by intentionally discriminating against
16 Plaintiffs and Class Members by charging higher interest rates and other fees and costs than were
17 charged to similarly situated non-minority borrowers.

18   88.    Defendant unlawfully discriminated against Plaintiffs and Class Members in (i)
19 formation of contracts, (ii) making, performance, modification, and termination of contracts, (iii)
20 the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship,
21 and/or (iv) conduct that interferes with the right to establish and enforce contract obligations.

22   89.    Defendant's actions violate 42 U.S.C. § 1981, as well as the rights of Plaintiffs
23 and the Class under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the
24 United States.

25   90.    Plaintiffs and Class Members are entitled to injunctive and declaratory relief and
26 damages, or make whole equitable relief as a result of Defendant's discriminatory conduct.

27   91.    At no time has Defendant undertaken corrective action to ameliorate its racially
28 discriminatory practices.  Defendant continues to reap the profits of its discriminatory practices.

-15-

CLASS ACTION COMPLAINT

1  Defendant's conduct as alleged herein was intentional, willful, wanton, reckless, malicious,

2  outrageous, or otherwise aggravated beyond mere negligence. Defendant has acted with malice

3  and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.

4  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

5  **COUNT FOUR**

6  **RACIAL DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT**

7  **(42 U.S.C. § 1982)**

8      92.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

9      93.    42 U.S.C. section 1982 provides that all citizens of the United States "shall have

10  the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit,

11  purchase, lease, sell, hold, and convey real and personal property."

12      94.    Defendant has discriminated against Plaintiffs and the Class with respect to their

13  home mortgage loans by charging Plaintiffs and the Class higher interest rates and other

14  discretionary fees than Defendant has charged similarly situated non-minority consumers. As a

15  result of Defendant's conduct, Plaintiffs and the Class have not had the same right as whites to

16  inherit, purchase, sell, hold, and convey real property. Defendant has thereby violated 42 U.S.C.

17  § 1982.

18      95.    Defendant's violation of 42 U.S.C. § 1982 was intentional and malicious.

19      96.    As a proximate result of Defendant's violation of 42 U.S.C. § 1982, Plaintiffs and

20  members of the Class have been injured, and are entitled to injunctive and declaratory relief and

21  damages, or make whole equitable relief. In addition, Defendant's conduct as alleged herein was

22  intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond

23  mere negligence. Defendants acted with malice and reckless indifference to the federally

24  protected rights of Plaintiffs and members of the Class. As a result, Plaintiffs and members of

25  the Class are entitled to punitive damages.

26  / / /

27  / / /

28  / / /

-16-

1

## **PRAYER FOR RELIEF**

2     WHEREFORE, the Plaintiffs respectfully request the following relief:

3     A.    Certify this case as a class action and certify the named Plaintiffs herein to be

4           adequate class representatives and their counsel to be class counsel;

5     B.    Enter a judgment pursuant to 15 U.S.C. section 1691e(c) and/or 42 U.S.C. section

6           3613 declaring the acts and practices of GREENPOINT complained of herein to

7           be in violation of ECOA and the FHA;

8     C.    Grant a permanent or final injunction, pursuant to 15 U.S.C. section 1691e(c)

9           and/or 42 U.S.C. section 3613(c), enjoining GREENPOINT and GREENPOINT's

10          agents, employees, affiliates and subsidiaries from continuing to discriminate

11          against Plaintiffs and the members of the Class because of their race or national

12          origin through further use of the Discretionary Pricing Policy or any non-risk-

13          related discretionary pricing policy employed by GREENPOINT;

14    D.    Order GREENPOINT pursuant to 15 U.S.C. section 1691e(c) and/or 42 U.S.C.

15          section 3613(c) to adopt and enforce a policy that requires appropriate training of

16          GREENPOINT's employees and its brokers to prevent discrimination;

17    E.    Order GREENPOINT pursuant to 15 U.S.C. section 1691e(c) and/or 42 U.S.C.

18          section 3613(c) to monitor and/or audit the racial pattern of its financings to

19          ensure the cessation of discriminatory effects in its home mortgage transactions;

20    F.    Order disgorgement pursuant to 15 U.S.C. section 1691e (c) of all

21          disproportionate non-risk charges imposed on minority borrowers by

22          GREENPOINT's Discretionary Pricing Policy and order the equitable distribution

23          of such charges, as restitutionary relief, to all appropriate class members;

24    G.    Order actual and punitive damages to the Plaintiffs and the class pursuant to 42

25          U.S.C. § 3613(c);

26    H.    Award Plaintiffs the costs of this action, including the fees and costs of experts,

27          together with reasonable attorneys' fees pursuant to 15 U.S.C. section 1691e(d)

28          and/or 42 U.S.C. sections 3613(c) and 1988; and

-17-

CLASS ACTION COMPLAINT

1    I.    Grant Plaintiffs and the Class such other and further relief as this Court finds

2    necessary and proper.

3    DATED this 18th day of January, 2008        CHAVEZ & GERTLER LLP

4                                                RODDY KLEIN & RYAN

5                                                MILLER LAW LLC

6                                                HAGENS BERMAN SOBOL
7                                                 SHAPIRO LLP

8                                                NATIONAL CONSUMER LAW CENTER

9

10                                               Mark A. Chavez

11                                               Attorneys for Plaintiffs

12

13   MILLER LAW LLC                              NATIONAL CONSUMER LAW CENTER
     Marvin A. Miller (To be admitted Pro Hac   Stuart T. Rossman (To be admitted Pro Hac
14   Vice)                                       Vice)
     Lori A. Fanning  (To be admitted Pro Hac   Charles Delbaum (To be admitted Pro Hac
15   Vice)                                       Vice)
     115 South LaSalle Street, Suite 2910       77 Summer Street, 10th Flr.
16   Chicago, IL  60603                          Boston, MA  02141
     Tel:    (312) 332-3400                      Tel:    (617) 542-8010
17                                               Fax:    (617) 542-8028

18   HAGENS BERMAN SOBOL
      SHAPIRO LLP
19   Thomas M. Sobol (To be admitted Pro Hac
     Vice)
20   One Main Street, 4th Floor
     Boston, MA  02142
21   Tel:    (617) 475-1950
     Fax:    (617) 482-3003
22

23

24

25

26

27

28

-18-

1                           **JURY TRIAL DEMANDED**

2         Plaintiffs demand a trial by jury on all issues so triable.

3

4   DATED this 18th day of January, 2008        CHAVEZ & GERTLER LLP

5                                 RODDY KLEIN & RYAN

6                                 MILLER LAW LLC

7                                 HAGENS BERMAN SOBOL
8                                  SHAPIRO LLP

9                               NATIONAL CONSUMER LAW CENTER

10

11                               Mark A. Chavez

12                               Attorneys for Plaintiffs
13

14   *Additional counsel for plaintiffs:*

15   MILLER LAW LLC                      NATIONAL CONSUMER LAW CENTER
     Marvin A. Miller (To be admitted Pro Hac      Stuart T. Rossman (To be admitted Pro Hac
16   Vice)                             Vice)
     Lori A. Fanning  (To be admitted Pro Hac      Charles Delbaum (To be admitted Pro Hac
17   Vice)                             Vice)
     115 South LaSalle Street, Suite 2910       77 Summer Street, 10th Flr.
18   Chicago, IL  60603                   Boston, MA  02141
     Tel:    (312) 332-3400               Tel:    (617) 542-8010
19                                 Fax:    (617) 542-8028

20   HAGENS BERMAN SOBOL
      SHAPIRO LLP
21   Thomas M. Sobol (To be admitted Pro Hac
     Vice)
22   One Main Street, 4th Floor
     Boston, MA  02142
23   Tel:    (617) 475-1950
     Fax:    (617) 482-3003
24

25

26

27

28

                                -19-

*EXHIBIT 1*

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (RESPA Transactions)

DATE:       August 3, 2005
CREDITOR:  GreenPoint Mortgage Funding, Inc.                                  Loan Number: 0087400008
PROPERTY: 46 Stellman RD, Roslindale, MA 02131

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of<br>$ N/A |
|---|---|---|---|---|
| 6.191 % | $ 626,441.47 | $ 461,893.20 | $ 1,088,334.67 | $ N/A |

Your Monthly payment schedule will be:

| Number of Payments | Amount of Payments | When payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| 1 | 1,733.52 | 10/01/2005 | | | | | | |
| 11 | 1,733.52 | 11/01/2005 | | | | | | |
| 12 | 1,863.53 | 10/01/2006 | | | | | | |
| 12 | 2,003.29 | 10/01/2007 | | | | | | |
| 12 | 2,153.54 | 10/01/2008 | | | | | | |
| 12 | 2,315.06 | 10/01/2009 | | | | | | |
| 299 | 3,225.04 | 10/01/2010 | | | | | | |
| 1 | 3,220.43 | 09/01/2035 | | | | | | |

**Construction Loan:** ☐ If checked, this loan provides for interest-only payments during the construction period. Beginning you will make periodic interest-only payments during the construction period, followed by payments of principal and interest as scheduled above.

**Variable Rate:** ☒ If checked, this loan contains a variable rate feature. ☒ Disclosures about the variable rate feature were provided to you earlier. ☐ Disclosure about the variable rate feature are provided in the attached Variable Rate Disclosure Addendum.

**Assumption:** Someone buying your property ☐ cannot, unless otherwise provided by federal law, ☒ may, subject to conditions, be allowed to assume the remainde of the loan on the original terms.

**Security:** You are giving a security interest in: 46 Stellman RD, Roslindale, MA 02131
☐ the property being purchased ☒ your property.

**Late Charge:** If a payment is not received by the end of 15 days after the date it is due, you will be charged 3.000 % of the overdue ☒ payment ☐ payment o principal and interest, but not less than U.S. $ .00 and not more than U.S. $ N/A.

**Prepayment:** If you pay this loan early you ☐ may ☒ will not have to pay a penalty. ☐ If you pay off an FHA insured loan, on a date other than the regula installment date, you may be assessed interest charges until the end of the month. You ☐ may be or ☒ will not be entitled to a refund of part of th finance charge.

**Deposit:** ☐ If checked, the annual percentage rate does not take into account your required deposit.

**Demand:** ☐ If checked, this loan has a demand feature

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds

8/2/2005 6:36:58 AM

Truth In Lending Disclosure Statement (RESPA Transactions) (Multistate)
GreenPoint Mortgage Funding                          Page 1 of 2                                    GP02001MU 06/



G P M W D 0 0 8 7 4 0 0 0 0 8 1 4 9