RAOUL D. KENNEDY (Bar No. 40892)
JOREN S. BASS (Bar No. 208143)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111-4144
Telephone: (415) 984-6400
Facsimile:  (415) 984-2698
Email: rkennedy@skadden.com, jbass@skadden.com

ANDREW L. SANDLER (admitted *pro hac vice*)
ANAND S. RAMAN (admitted *pro hac vice*)
CAITLIN M. KASMAR (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760
Email: asandler@skadden.com, araman@skadden.com, ckasmar@skadden.com

Counsel for Defendant
GREENPOINT MORTGAGE FUNDING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA RAMIREZ, ISMAEL RAMIREZ, and JORGE SALAZAR, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GREENPOINT MORTGAGE FUNDING, INC.,<br><br>　　　　　　　　Defendant. | CASE NO.: 3:08-cv-00369-TEH<br><br>CLASS ACTION<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:　May 19, 2008<br>Time:　10:00 a.m.<br>Place:　Courtroom 12<br>Judge:　The Honorable Thelton E. Henderson |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

    A.    Neither the FHA Nor ECOA Permit a Disparate Impact Claim ..............................2

    B.    Plaintiffs Fail to Allege a Cognizable Disparate Impact Claim ...............................3

        1.    Plaintiffs Identify No "Specific Policy or Practice" of GreenPoint .............3

        2.    Plaintiffs Fail to Allege A Disparate Impact ................................................6

    C.    The Statute of Limitations Bars the Ramirezes' Claims .........................................7

        1.    Discovery Rule..............................................................................................7

        2.    Continuing Violation ....................................................................................8

        3.    Fraudulent Concealment ..............................................................................9

    D.    Conclusion ..............................................................................................................10

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Affordable Housing Development Corp. v. City of Fresno*,
   433 F.3d 1182 (9th Cir. 2006) ................................................................................................ 2

*AFSCME v. State of Washington*,
   770 F.2d 1401 (9th Cir. 1985) ........................................................................................ 3, 5, 6

*Archer v. Nissan Motor Acceptance Corp.*,
   No. 3:03cv906, 2007 U.S. Dist. LEXIS 65570 (S.D. Miss. Sept. 4, 2007) ............................ 7

*Barkley v. Olympia Mortgage Co.*,
   No. 04cv875, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007) ................................................. 8

*Beard v. Dominion Homes Financial Services, Inc.*,
   No. 06-00137, 2007 WL 2137944 (S.D. Ohio July 23, 2007) ............................................... 9

*Beaulialice v. Federal Home Loan Mortgage Corp.*,
   No. 8:04-CV02316-T-24-EAJ, 2007 WL 744646 (M.D. Fla. Mar. 6, 2007) ........................ 3

*Dothard v. Rawlinson*,
   433 U.S. 321 (1977) ................................................................................................................ 5

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) .................................................................................................. 2

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ................................................................................................................ 9

*Jones v. Ford Motor Credit Co.*,
   No. 00 CIV 8330, 2002 WL 88431 (S.D.N.Y. Jan. 22, 2002) ............................................... 6

*Ledbetter v. Goodyear Tire & Rubber Co.*,
   127 S. Ct. 2162 (2007) ............................................................................................................ 8

*National Fair Housing Alliance v. A.G. Spanos Construction, Inc.*,
   No. 07-3255, 2008 WL 927711 (N.D. Cal. Apr. 4, 2008) ..................................................... 8

*National Railroad Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ................................................................................................................ 9

*Powell v. American General Finance, Inc.*,
   310 F. Supp. 2d 481 (N.D.N.Y. 2004) .................................................................................... 5

*Rutledge v. Boston Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) .................................................................................................. 9

*Silver State Housing Council, Inc. v. ERGS, Inc.*,
   362 F. Supp. 2d 1218 (D. Nev. 2005) ..................................................................................... 8

*Smith v. Chrysler Financial Co., L.L.C.*,
   No. Civ.A 00-6003, 2003 WL 328719 (D.N.J. Jan. 15, 2003) .............................................. 6

*Smith v. City of Jackson*,
  544 U.S. 228 (2005) ............................................................................................................ 1, 2, 3, 6

*Spaulding v. University of Washington*,
  740 F.2d 686 (9th Cir. 1984) ................................................................................................ 1, 3, 5, 6

*Sprint Communications Co., L.P. v. Federal Communications Commission*,
  76 F.3d 1221 (D.C. Cir. 1996) ......................................................................................................... 7

*Stout v. Potter*,
  276 F.3d 1118 (9th Cir. 2002) .................................................................................................. 3, 4, 6

*Timmel v. Moss*,
  803 F.2d 519 (9th Cir. 1986) ............................................................................................................ 7

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977 (1988) .............................................................................................................. 3, 4, 5, 6

*Zamudio v. HSBC North America Holdings, Inc.*,
  No. 07-C-4315, 2009 WL 517138 (N.D. Ill. Feb. 20, 2008) ........................................................... 3

**OTHER AUTHORITIES**

51 Am. Jur. 2d Limitation of Actions § 15 ....................................................................................... 10

Federal Rules of Civil Procedure 15(a) ............................................................................................. 6

1  Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Opposition") does not directly address many of Defendant's principal arguments, raises new allegations against GreenPoint which did not appear in their First Amended Complaint ("Complaint"), and misinterprets Ninth Circuit and U.S. Supreme Court precedent relating to disparate impact analysis.

In their Opposition, Plaintiffs argue that the Supreme Court's ruling in *Smith v. City of Jackson*, 544 U.S. 228 (2005), does not affect the analysis courts must perform in deciding whether a particular statute allows a disparate impact claim, and that Ninth Circuit precedent permits disparate impact claims under both the ECOA and the FHA.  However, Plaintiffs overlook the fact that the Ninth Circuit has not yet squarely dealt with the *Smith* ruling in interpreting either the FHA or ECOA, and thus pre-*Smith* caselaw is of limited relevance to this issue.

Plaintiffs further contend that their allegations relating to a "Discretionary Pricing Policy" are sufficient to state a disparate impact claim despite clear Ninth Circuit and Supreme Court precedent requiring plaintiffs to allege a specific policy or practice <u>of the defendant</u> that has caused the impact.  In this regard, Plaintiffs continue to do no more than attack the cumulative effect of pricing by thousands of brokers, which is exactly the sort of claim that is barred by cases such as *Spaulding v. University of Washington*, 740 F.2d 686, 707 (9th Cir. 1984).  Plaintiffs' reference to a handful of district court cases in the auto lending context is unavailing, since those cases were resolved via settlement and involve facts and allegations different than those made here.

Finally, Plaintiffs contend that the Ramirezes' claims are saved from dismissal based on the statute of limitations because the Ramirezes could not reasonably have discovered the cause of their alleged injury and filed suit in a timely manner.  But this claim is defeated by Plaintiffs' own allegations that <u>publicly available</u> data demonstrate the discriminatory nature of GreenPoint's policies.  Further, though Plaintiffs attempt to characterize the harm they allegedly suffered as the result of a continuing violation rather than a discrete act, such characterization is unsupported by both case law and common sense.  Finally, Plaintiffs' fraudulent concealment claim is inconsistent with the rest of the Complaint, which nowhere alleges intentional discrimination by GreenPoint.

In sum, the extremely broad view of disparate impact that Plaintiffs espouse is unworkable and problematic for several reasons: it would permit lenders to be held liable for the actions of independent brokers; it would allow plaintiffs to bring claims against lenders with no evidence that similarly-situated minority borrowers were treated differently by that lender than non-minority borrowers; and it would allow plaintiffs whose claims were clearly barred by the limitation periods set forth by statute to sustain claims years after their injury was discoverable. Such a view is neither supported by legal precedent nor makes sense from a policy perspective.

For these reasons, as well as those cited in Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss ("Def.'s Mem."), this Court should reject Plaintiffs' arguments and dismiss the Complaint in its entirety.

### A. Neither the FHA Nor ECOA Permit a Disparate Impact Claim

GreenPoint does not dispute that the Ninth Circuit has previously allowed disparate impact claims under the FHA and the ECOA. (*See* Def.'s Mem. at 3.) GreenPoint's point, however, is that cases decided prior to *Smith*, which could not possibly have addressed the analysis performed by the Supreme Court in that case, cannot be relied upon in support of Plaintiffs' argument that disparate impact claims are still permissible under the ECOA and FHA post-*Smith*.

Plaintiffs cite various post-*Smith* cases in support of their argument that the *Smith* decision has no bearing on this case. However, Plaintiffs go too far in suggesting that those courts held unequivocally that ECOA or the FHA permit disparate impact claims. For instance, in *Golden v. City of Columbus*, decided less than a month after *Smith*, the court stated that "[w]e assume that disparate impact claims are permissible under ECOA," and noted in a footnote that "[n]either the Supreme Court nor this Court have previously decided whether disparate impact claims are permissible under ECOA. However, it appears that they are." *Golden*, 404 F.3d 950, 963 & n. 11 (6th Cir. 2005) (emphasis added). The court never discussed, or even mentioned, the recent decision in *Smith*. In fact, none of the Courts of Appeals cases cited by Plaintiffs for this proposition addresses the *Smith* decision, including the Ninth Circuit's decision in *Affordable Housing Development Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006).

Similarly, of the district court cases cited by Plaintiffs in support of this argument, only two (out of six) opinions even mention *Smith*, and neither of those opinions reflects the textual analysis that *Smith* requires. In *Zamudio,* the court simply states that *Smith* "does not . . . prohibit disparate impact claims under other statutes . . . ." *Zamudio v. HSBC N. Am. Holdings, Inc.*, No. 07-C-4315, 2009 WL 517138, at *2 (N.D. Ill. Feb. 20, 2008). Likewise, in *Beaulialice*, the court states almost identically that *Smith* does not "prohibit disparate impact claims under either [the FHA or ECOA]," without performing any textual analysis of either statute. *Beaulialice v. Fed. Home Loan Mortgage Corp.*, No. 8:04-CV02316-T-24-EAJ, 2007 WL 744646, at *14-16 (M.D. Fla. Mar. 6, 2007).

In short, there is no controlling precedent in which a court has squarely addressed the *Smith* decision and held that disparate impact claims are still permitted under the ECOA and the FHA. This Court should therefore conduct its own analysis and make an independent determination as to whether and how the *Smith* decision impacts courts' analysis of disparate impact claims. And as set forth in GreenPoint's Opening Memorandum, *Smith* requires dismissal of Plaintiffs' claims, because under the textual analysis required by *Smith*, both the ECOA and the FHA lack the crucial "effects" language required to support a disparate impact claim.

### B. Plaintiffs Fail to Allege a Cognizable Disparate Impact Claim

#### 1. Plaintiffs Identify No "Specific Policy or Practice" of GreenPoint

Plaintiffs brush off as "irrelevant" GreenPoint's argument that Plaintiffs have failed to allege a policy of GreenPoint responsible for a disparate impact. (Pls.' Opp'n at 11.) In so doing, Plaintiffs appear to suggest that they can simply incant the word "policy" in order to satisfy the requirements of cases such as *Stout v. Potter*, 276 F.3d 1118 (9th Cir. 2002), *AFSCME v. State of Washington*, 770 F.2d 1401 (9th Cir. 1985), *Spaulding,* 740 F.2d at 707, and *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). But those cases require, even on a motion to dismiss, that Plaintiffs identify a specific practice or policy of the defendant that has caused the disparate impact – which they have not done. What Plaintiffs in essence attempt to challenge in this suit is the

cumulative effect of thousands of pricing decisions by independent brokers – not a specific policy of GreenPoint.[1]

Plaintiffs refer to cases such as *Watson*, which permit disparate impact analysis in the context of subjective employment criteria (rather than limiting disparate impact to objective or standardized tests). *Watson*, however, involved allegations related to a bank's policy of evaluating candidates for positions based on the subjective judgment of supervisors. *Watson*, 487 U.S. at 982. The Court held that disparate impact analysis could be applied to a subjective policy in this factual context, but stated that:

> [T]he plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged. Although this has been relatively easy to do in challenges to standardized tests, it may sometimes be more difficult when subjective selection criteria are at issue. Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.

*Id*. at 994. As the Court predicted in *Watson*, it has proven "more difficult" for Plaintiffs in this case to identify the subjective policy they are challenging, because there <u>is</u> no GreenPoint policy that Plaintiffs are able to point to which resulted in a disparate impact on minorities. Rather, such impact (if it exists) is the result of individual brokers' decisions regarding price on thousands of different individual loans.

To understand why Plaintiffs' claim against GreenPoint, which is premised on the actions of independent brokers, does not fall within the framework of disparate impact, it may be useful to consider an analogy from employment law. It is undisputed that if an employer had a policy of

---

[1] Plaintiffs' reference to the definition of "creditor" in the ECOA and its implementing regulations is inapposite. A plaintiff cannot state a claim under the ECOA or the FHA by simply alleging that a defendant is a creditor. The question is not whether GreenPoint is a creditor under the ECOA; instead, the question is whether Plaintiffs have adequately alleged a GreenPoint policy responsible for a disparate impact on minority borrowers rather than "attack[ing] an overall decisionmaking process." *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002).

only hiring employees who were taller than 5' 7", and that this policy had no relevance to the job, then the policy could be challenged due to its disparate impact on female job applicants. *See*, *e.g.*, *Dothard v. Rawlinson*, 433 U.S. 321, 330-31 (1977) (height and weight requirement for correctional officers violates Title VII).

But suppose instead that an employer did not itself impose a height requirement, but contracted with a number of independent employment brokers to refer job applicants. Suppose further that the employer "authorized" the employment brokers to decide who to refer based on their own "discretion," and that the employment brokers, for whatever reason, referred a disproportionate number of males taller than 5'7" to the employer. Under Plaintiffs' theory, a disparate impact claim could be maintained against the employer for "authorizing" the agencies to exercise their discretion. But this is clearly not what the law allows. Disparate impact is not a tool that can be used to force a lender to "police" the actions of independent brokers any more than it could be used to force an employer to police independent employment brokers. Rather, disparate impact is an analytical framework that can be used only when a employer has an actual and identifiable policy that has created the impact. *See, e.g.*, *Spaulding*, 740 F.2d at 707-09.

Plaintiffs point to a handful of mostly unpublished district court opinions from the automobile lending context, in cases that were ultimately resolved by settlement, in support of their argument that their allegations of a "Discretionary Pricing Policy" are sufficient to state a disparate impact claim against GreenPoint. These cases are unpersuasive. None of the cases Plaintiffs cites discuss whether an alleged "policy" involving discretionary pricing by independent brokers meets the specificity requirement set forth in *Watson*, *AFSCME*, or the other cases cited in Defendant's Memorandum.

In fact, in one of the cases cited by Plaintiffs, *Powell v. American General Finance, Inc.*, 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004), the court <u>dismissed</u> plaintiff's disparate impact claim on the ground that she had not alleged a specific policy of the defendant – which of course is precisely GreenPoint's argument here. Moreover, each of these cases involve numerous allegations that are not made here. *See, e.g.*, *Smith v. Chrysler Fin. Co.,* No. Civ.A 00-6003, 2003 WL 328719

(D.N.J. Jan. 15, 2003) (plaintiffs claimed, among other things, that defendant's advertising and marketing projected an image that they offer objectively risk-related credit, when in fact they did not); *Jones v. Ford Motor Credit Co.*, No. 00 CIV 8330, 2002 WL 88431 (S.D.N.Y. Jan. 22, 2002) (same).

In sum, the cases cited by Plaintiffs are not directly on point to the issues raised in GreenPoint's Motion to Dismiss – and even if they were, this Court is not bound by these disparate District Court opinions, but should instead undertake its own independent analysis, governed by the reasoning applied in cases such as *Watson*, *Smith v. City of Jackson*, *Stout*, *AFSCME*, and *Spaulding*, and based on the Complaint in this case.

2. <u>Plaintiffs Fail to Allege A Disparate Impact</u>

Plaintiffs concede that to state a claim of disparate impact they must, at a minimum, allege that minority borrowers paid more for their loans than similarly-situated white borrowers. (Pls.' Opp'n at 15.) But they do not rebut GreenPoint's argument that the Complaint's only allegation related to similarly-situated borrowers pertains to <u>other mortgage companies</u>, not GreenPoint. (*See* Def.'s Mem. at 10-11; Compl. ¶ 48 ("statistical analysis of . . . customers of other mortgage companies . . . has revealed that minority borrowers, after controlling for credit risk, are substantially more likely than similarly situated whites to pay such charges").)

At a minimum, Plaintiffs must allege facts demonstrating that minority borrowers who obtained loans <u>from GreenPoint</u> received loans with inferior terms compared to those received by white borrowers who were similarly situated. The view advanced by Plaintiffs, that they need not make allegations about GreenPoint and can instead rely on generalized allegations about the mortgage industry in support of a disparate impact claim, is simply incorrect.[2]

---

[2] In addition to their claims that GreenPoint "designed" and "controlled" the "Discretionary Pricing Policy" (Compl. ¶ 50), Plaintiffs now claim that the Complaint alleges that GreenPoint "encourag[ed] its brokers to use the discretion afforded by its policy to markup loans." (Pls.' Opp'n at 1.) The Complaint contains no such allegation. It is fundamental that Plaintiffs may not use their Opposition as a vehicle to amend a second time. *See* F.R.C.P. 15(a) (requiring leave of court or permission of opposing party to amend a pleading a second time).

**C.      The Statute of Limitations Bars the Ramirezes' Claims**

        1.      Discovery Rule

Plaintiffs contend that the Ramirezes' claims cannot be dismissed at this stage of litigation because the issue of whether or not they discovered or should have discovered the facts giving rise to their claims presents a question of fact. (Pls.' Opp'n at 16.) But Plaintiffs' own allegations establish the opposite – that the Ramirezes were on notice of the facts underlying their claims at the time they obtained their loan in August 2005.

The cases cited by Plaintiffs do not hold that a statute of limitations issue cannot be decided as a matter of law where the complaint itself demonstrates that plaintiff had notice of its claims. *See, e.g., Timmel v. Moss*, 803 F.2d 519, 521 (9th Cir. 1986) (noting that the reasonableness of delayed discovery of a claim can be decided as a matter of law where it is beyond dispute that the plaintiff failed to bring suit within the appropriate amount of time after learning of his claim). Moreover, at least one court has held that there is no general discovery rule applicable to ECOA claims and that tolling applies only to governmental enforcement actions. *See Archer v. Nissan Motor Acceptance Corp.*, No. 3:03cv906, 2007 U.S. Dist. LEXIS 65570, at *9-11 (S.D. Miss. Sept. 4, 2007).

As GreenPoint argued in its Opening Memorandum, Plaintiffs themselves allege that information regarding the alleged discriminatory impact of discretionary pricing systems has been publicly available for years. (Compl. ¶ 88; Def.'s Mem. at 12.) Furthermore, the Ramirezes cannot deny that they knew the terms and conditions of their own loan, and that information relating to the prices paid by white borrowers was publicly available through HMDA data. (*See* Compl. ¶¶ 56-60; Def.'s Mem. at 13 (noting that HMDA data becomes publicly available by March 31 of the year following the year for which the data were compiled).)

Contrary to Plaintiffs' argument, nothing else is required for Plaintiffs to have notice of their claim. The discovery rule is only properly invoked "in cases in which the injury is not of the sort that can readily be discovered when it occurs." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (internal quotation omitted). That is clearly not the case here, where all the

information that forms the basis of the Plaintiffs' Complaint was available to them well within the limitations period.[3]

### 2. Continuing Violation

Plaintiffs next present the convoluted argument that the continuing violation doctrine applies because of the "teaser rate" structure of the Ramirezes' loan, which "almost certainly necessitated a refinance prior to the maturity date" of their loan. (Pls.' Opp'n at 19.) According to Plaintiffs, because the Ramirezes may have, at some future date, returned to GreenPoint to seek refinancing, that potential future interaction between them and GreenPoint is enough to turn the single, discrete loan transaction at issue in this case into a continuing violation.

This view is, not surprisingly, unsupported by precedent, which, contrary to Plaintiffs' suggestion, clearly holds that where no discriminatory acts are alleged to have occurred within the limitations period, a plaintiff cannot bootstrap past acts to a continuing practice in order to bring the claims within the limitations period. The very cases Plaintiffs cite say as much. *See, e.g., Nat'l Fair Hous. Alliance v. A.G. Spanos Const., Inc.*, No. 07-3255, 2008 WL 927711 (N.D. Cal. Apr. 4, 2008); *Silver State Fair Hous. Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (D. Nev. 2005) (holding that the builder of two allegedly noncompliant apartment complexes could be held liable under a continuing violation theory for both complexes since one of them was built within the limitations period, but that the owner of the complex built outside of the limitations period could not similarly be held liable). Just like the claim made in *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007), Plaintiffs here do not allege "a single wrong consisting of a succession of acts." *Id.* at 2175. Rather, they allege one discrete discriminatory act, which occurred when the Ramirezes closed on their GreenPoint loan.[4]

---

[3] The cases Plaintiffs cite in support of their argument that the statute of limitations is tolled are unhelpful to their position. For instance, in *Barkley v. Olympia Mortgage Co.*, No. 04cv875, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007), the court concluded that equitable tolling <u>did not</u> apply to plaintiffs' claims because they failed to allege the date on which they learned of their claims.

[4] Courts have distinguished between discrete acts – such as closing on a mortgage loan – and claims involving repeated conduct, such as hostile work environment claims. *See Nat'l R.R.*
*(cont'd)*

**1**      3.   Fraudulent Concealment

**2**  Finally, Plaintiffs claim that but for GreenPoint's fraudulent concealment of the facts

**3** alleged in the Complaint, they would have discovered their claim earlier. (Compl. ¶ 87; Pls.' Opp'n

**4** at 20-21.) However, as GreenPoint pointed out in its Opening Memorandum, such claims sound in

**5** fraud and must therefore be pled with particularity. Plaintiffs have not done this. (Def.'s Mem. at

**6** 13 (citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).)

**7**  In this regard, Plaintiffs misconstrue the holding of *Beard v. Dominion Homes Financial*

**8** *Services, Inc.*, No. 2:06cv00137, 2007 WL 2137944 (S.D. Ohio July 23, 2007). Plaintiffs claim

**9** that the *Beard* court held that "wrongful concealment could be satisfied by misleading statements

**10** rather than active conduct." (Pls.' Opp'n at 21.) In fact, the court held that "<u>active conduct</u> is

**11** necessary to meet the first element of wrongful concealment." *Beard*, 2007 WL 2137944 at *3

**12** (emphasis added). The plaintiffs in *Beard* alleged that a letter sent by defendant misled plaintiffs

**13** into believing that their loans were insured by the FHA when, in fact, they were not. *Id.* at *1.

**14** Thus, the *Beard* plaintiffs had made a specific allegation of affirmative conduct by defendant that

**15** concealed the truth from plaintiffs – unlike the allegations made by Plaintiffs here, which are

**16** conclusory in nature and fail to demonstrate any affirmatively misleading conduct by GreenPoint.

**17**  In addition, the fact that the Ramirezes did not seek legal advice until their claims had

**18** expired does not, as Plaintiffs suggest, translate into active concealment on the part of GreenPoint.

**19** If the statute of limitations did not begin running until the date prospective litigants met with

**20** counsel, as Plaintiffs propose (*see* Pls.' Opp'n at 18), there would be very few suits <u>ever</u> barred by a

**21** _____
*(cont'd from previous page)*

**22**  *Passenger Corp. v. Morgan*, 536 U.S. 101, 114-18 (2002) (holding that hostile work environment claims, which are based on the "cumulative effect of individual acts," may be
**23**  timely filed where some component acts of the hostile work environment fall outside the statutory time period, but discrete discriminatory acts (such as termination, failure to promote,
**24**  refusal to hire) "occur" for limitations purposes on the date that the act took place). While Plaintiffs may claim that the Discretionary Pricing Policy was applied discriminatorily to
**25**  numerous borrowers, that does not by itself make it a continuing practice of the type discussed in *Morgan* or *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). *See, e.g.,*
**26**  *Havens*, 455 U.S. at 380-81 (holding that claims of "racial steering" – a practice under which defendant on numerous occasions turned down black apartment rental applicants – were not
**27**  time-barred because at least one of the acts that constituted the pattern of conduct occurred within the limitations period).

**28**

-9-
GreenPoint's Reply to Plaintiffs' Opposition to Motion to Dismiss

statute of limitations.  Under Plaintiffs' theory, even if an injured party had all the facts available to him to discover the nature and cause of his injuries, he would not be required to file suit until after meeting with an attorney where, presumably, he would be informed that he had a cause of action. This is exactly what statutes of limitation are designed to protect against.  *See* 51 Am. Jur. 2d Limitation of Actions § 15 ("Statutes of limitation are designed, in part, to protect potential defendants from the burden of litigating stale claims by putting defendants on notice of claims against them within specified periods, so they can prepare their defenses adequately while the evidence is still fresh.")(footnotes omitted).  In short, Plaintiffs cannot toll the statute of limitations with the kind of conclusory claims of concealment made here.

### D. Conclusion

The essence of Plaintiffs' claim is that GreenPoint should be held responsible for the allegedly discriminatory acts of thousands of independent brokers making pricing decisions on thousands of unique loans.  But the law of disparate impact cannot be read to impose a duty on GreenPoint to police the actions of independent brokers.  Consequently, the Complaint should be dismissed.

For the foregoing reasons, GreenPoint's Motion to Dismiss should be granted.

DATED:  May 2, 2008                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


By:  _____/s/ Raoul D. Kennedy_____
              Raoul D. Kennedy

Attorneys for DEFENDANT
GREENPOINT MORTGAGE FUNDING, INC.

1  RAOUL D. KENNEDY (Bar No. 40892)
   JOREN S. BASS (Bar No. 208143)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, Suite 3800
3  San Francisco, California 94111-4144
   Telephone: (415) 984-6400
4  Facsimile:  (415) 984-2698
   Email:  rkennedy@skadden.com, jbass@skadden.com
5

6  ANDREW L. SANDLER (admitted *Pro Hac Vice*)
   ANAND S. RAMAN (admitted *Pro Hac Vice*)
7  CAITLIN M. KASMAR (admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  1440 New York Avenue, N.W.
   Washington, D.C.  20005
9  Telephone: (202) 371-7000
   Facsimile:  (202) 393-5760
10 Email:  asandler@skadden.com, araman@skadden.com, ckasmar@skadden.com

11 Attorneys for DEFENDANT GREENPOINT MORTGAGE FUNDING, INC.

12                    **UNITED STATES DISTRICT COURT**

13                    **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN FRANCISCO DIVISION**

15 ANA RAMIREZ, ISMAEL RAMIREZ and JORGE   )  CASE NO. 08-CV-00369-TEH
   SALAZAR, on behalf of themselves and all others  )
16 similarly situated,                     )  <u>CLASS ACTION</u>
                                           )
17                   Plaintiffs,           )  **PROOF OF SERVICE**
                                           )
18         v.                              )  Date:  May 19, 2008
                                           )  Time:  10:00 a.m.
19 GREENPOINT MORTGAGE FUNDING, INC.,      )  Place: Courtroom 12
                                           )  Judge: Hon. Thelton E. Henderson
20                   Defendant.            )
                                           )

---

**PROOF OF SERVICE**                                        **CASE NO. 08-CV-00369-TEH**

# PROOF OF SERVICE

I, the undersigned, declare that: I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the instant case. My business address is 4 Embarcadero Center, Suite 3800, San Francisco, California 94111.

On **May 2, 2008**, I served the following documents described as:

**1. DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; and**

**2. PROOF OF SERVICE**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ (BY U.S. MAIL IN THE ORDINARY COURSE OF BUSINESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at San Francisco, California and placed for collection and mailing following ordinary business practices.

☐ (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the document(s) was transmitted by facsimile transmission and that the transmission was reported as complete and without error and that the transmission report was properly issued by the transmitting facsimile machine.

☐ (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at San Francisco, California and placed for collection and delivery following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 2, 2008**, at San Francisco, California.

| **Pat Owens** | /s/ Pat owens |
|---|---|
| Type or Print Name | Signature |

-1-

**PROOF OF SERVICE**   **CASE NO. 08-CV-00369-TEH**

-2-

| | |
|---|---|
| 1 | |
| 2 | RAMIREZ, et al. v. GREENPONT MORTGAGE FUNDING, INC.<br>U.S. District Court, California Northern District; Case No. 08-CV-00369-TEH |

**SERVICE LIST**

| | | |
|---|---|---|
| 5 | Charles Delbaum<br>Stuart T. Rossman<br>National Consumer Law Center<br>77 Summer Street, 10th Floor<br>Boston, MA 02141<br>Telephone: (617) 542-8010<br>Facsimile: (617) 542-8028 | Attorneys for Plaintiffs |
| 9 | Marvin A. Miller<br>Lori A. Fanning<br>Miller Law LLC<br>115 South LaSalle Street, Suite 2910<br>Chicago, IL 60603<br>Telephone: (312) 332-3400<br>Facsimile: (312) 676-2676 | Attorneys for Plaintiffs |
| 13 | Shennan Kavanagh<br>Roddy Klein & Ryan<br>727 Atlantic Avenue<br>Boston, MA 02111-2810<br>Telephone: (617) 357-5500 ext 12<br>Facsimile: (617) 357-5030 | Attorneys for Plaintiffs |

-2-

**PROOF OF SERVICE**  **CASE NO. 08-CV-00369-TEH**

-3-

## SIGNATURE ATTESTATION

I, Raoul Kennedy, am the ECF User whose ID and password are being used to file this PROOF OF SERVICE.  In compliance with General Order 45, X.B., I hereby attest that Pat Owens has concurred in this filing.

DATED: May 2, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  /s/ Raoul D. Kennedy
RAOUL D. KENNEDY
Attorneys for Defendant
GREENPOINT MORTGAGE FUNDING, INC.