IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANA RAMIREZ, et al.,

               Plaintiffs,

        v.

GREENPOINT MORTGAGE FUNDING, INC.,

               Defendant.

NO. C08-0369 TEH

ORDER DENYING MOTION TO DISMISS

    This matter comes before the Court on Defendant GreenPoint Mortgage Funding, Inc.'s ("GreenPoint's") motion to dismiss the first amended complaint. Upon careful consideration of the parties' written submissions, the Court does not find oral argument to be necessary and hereby VACATES the hearing scheduled for May 19, 2008, at 10:00 AM. For the reasons discussed below, the Court now DENIES GreenPoint's motion in its entirety.

**BACKGROUND**

    Plaintiffs Ana Ramirez, Ismael Ramirez, and Jorge Salazar bring this action against Defendant GreenPoint on behalf of themselves and all others similarly situated. They seek to represent a class of:

> all minority consumers (the "Class") who obtained a GREENPOINT home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the "Class Period"), and who were subject to GREENPOINT's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest rate mark-ups in connection with their loan. For the purposes of this Complaint, the term "minority" is intended to include black and Hispanic consumers.

First Am. Compl. ("FAC") ¶ 77. "Discretionary Pricing Policy" refers to GreenPoint's alleged "policy of authorizing its loan officers, brokers and correspondent lenders to impose

subjective, discretionary charges and interest rate mark-ups that are included in the loans they originate." *Id.* ¶ 79.

The Ramirez Plaintiffs allegedly obtained a GreenPoint mortgage through a broker on August 3, 2005. Plaintiff Salazar allegedly obtained such a mortgage, through a different broker, on August 17, 2006. Both loans are alleged to have included, unbeknownst to Plaintiffs, subjective charges based on GreenPoint's Discretionary Pricing Policy that were greater than non-risk-related charges paid by similarly situated white borrowers.

According to the complaint's allegations, GreenPoint makes home mortgage loans directly to consumers through its local branches as well as through a network of mortgage brokers. Based on the locations of GreenPoint's branches, minority borrowers are alleged to be more likely than white borrowers to apply for mortgages through brokers rather than through GreenPoint directly, and loans obtained through mortgage brokers are alleged to be more expensive, on average, than loans obtained directly from GreenPoint. Loan officers and brokers are alleged to have been GreenPoint's agents "for the purpose of setting credit price, which was always set based on GREENPOINT's policy." *Id.* ¶ 49.

The process of obtaining a loan from GreenPoint allegedly has two distinct components. In the first, GreenPoint "compute[s] a financing rate [often called the 'Par Rate'] through an objective credit analysis that, in general, discern[s] the creditworthiness of the customer." *Id.* ¶¶ 41-43. "Although GREENPOINT's initial analysis applied objective criteria to calculate this risk-related Par Rate, GREENPOINT then authorized a subjective component in its credit-pricing system – the Discretionary Pricing Policy – to impose additional non-risk-related charges." *Id.* ¶ 44. These discretionary charges are alleged to have been "paid by the customer as a component of the total finance charge (the 'Contract APR'), without the homeowner knowing that a portion of their Contract APR was a non-risk-related charge." *Id.* ¶ 45. GreenPoint profited from such discretionary mark-ups regardless of whether the loan was obtained from GreenPoint directly or through a mortgage broker.

Plaintiffs allege that GreenPoint's Discretionary Pricing Policy had an adverse disparate impact on minority borrowers because such borrowers paid higher fees and interest

2

rates than white borrowers who posed similar credit risks. GreenPoint is alleged to have "chosen to use a commission-driven, subjective pricing policy that it knows or should have known has a significant and pervasive impact on minority borrowers." *Id.* ¶ 51. Plaintiffs further allege that "[t]he disparities between the terms of GREENPOINT's transactions involving minority homeowners and the terms involving white homeowners cannot be a product of chance and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of the discriminatory Discretionary Pricing Policy." *Id.* ¶ 52.

Based on these allegations, Plaintiffs assert two causes of action: violation of the Equal Credit Opportunity Act ("ECOA") and violation of the Fair Housing Act ("FHA"). The ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a). The FHA makes it unlawful "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In addition, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended*

3

1  *on other grounds by* 275 F.3d 1187 (9th Cir. 2001).  A court should not grant dismissal
2  unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible
3  on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Moreover,
4  dismissal should be with leave to amend unless it is clear that amendment could not possibly
5  cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th
6  Cir. 1998).

## DISCUSSION

### I.     Whether the FHA and ECOA Permit Disparate Impact Claims

GreenPoint first moves to dismiss the complaint on grounds that the FHA and ECOA do not allow disparate impact claims.  GreenPoint acknowledges that Ninth Circuit precedent clearly allows such claims. *See, e.g., Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (disparate impact claims allowable under FHA); *Miller v. Am. Express Co.*, 688 F.2d 1235, 1239-40 (9th Cir. 1982) (disparate impact claims allowable under ECOA).  However, GreenPoint contends that such precedent is no longer good law in light of the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005).  Although neither party discussed the relevant standard, the Ninth Circuit has held that "where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

In *Smith*, the Supreme Court ruled that the Age Discrimination in Employment Act ("ADEA") allows for disparate impact claims based on analysis of the statute's text, the governing regulations, the purposes of the act, and the uniform interpretation of the appellate courts. *Smith*, 544 U.S. at 233-40.  GreenPoint focuses on the textual analysis under which the Court held that one paragraph of the ADEA allows disparate impact claims because, like Title VII, it provides that an employer may not "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities

4

or *otherwise adversely affect* his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphasis added). By contrast, the Court noted in a footnote that paragraph (a)(1) of the same statute, which prohibits certain actions by an employer "because of such individual's age," does not allow for disparate impact claims. *Smith*, 544 U.S. at 236 n.6 (quoting 29 U.S.C. § 623(a)(1)). GreenPoint argues that the language of both the FHA and ECOA is more analogous to paragraph (a)(1) than to paragraph (a)(2), and that *Smith* therefore mandates the conclusion that the FHA and ECOA do not permit disparate impact claims.

However, GreenPoint reads *Smith* too broadly, and no court has applied *Smith* to find that disparate impact claims are not cognizable under the FHA or ECOA. To the contrary, numerous courts post-*Smith* have addressed disparate impact claims under these statutes. *E.g.*, *Graoch Associates # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n*, 508 F.3d 366, 371-74 (6th Cir. 2007) (FHA); *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007) (FHA); *Affordable Housing Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1194-95 (9th Cir. 2006) (FHA); *Zamudio v. HSBC N. Am. Holdings Inc.*, No. 07 C 4315, 2008 WL 517138, at *2 (N.D. Ill. Feb. 20, 2008) (ECOA and FHA); *Garcia v. Country Wide Financial Corp.*, No. EDCV 07-1161-VAP (JCRx), Am. Order Granting in Part & Denying in Part Defs.' Mot. to Dismiss, at 7-11 (C.D. Cal. Jan. 17, 2008) (attached as Ex. A to moving papers and Ex. 1 to opposition brief; hereinafter "*Garcia* Order") (ECOA and FHA); *Beaulialice v. Fed. Home Loan Mortg. Corp.*, No. 8:04-CV-2316-T-24-EAJ, 2007 WL 744646, at *4 (M.D. Fla. Mar. 6, 2007) (ECOA and FHA). Although GreenPoint correctly observes that not all of these courts specifically discussed *Smith*, the fact that the courts nonetheless addressed disparate impact claims under the FHA and ECOA indicates that pre-*Smith* precedent allowing such claims has not been overruled.

Moreover, at least three district courts have explicitly considered *Smith* and concluded that the case did not bar disparate impact claims under the FHA or ECOA. Having carefully considered the analysis contained in both *Smith* and those decisions, this Court agrees that *Smith* "did not hold that a statute must contain . . . 'effects' language in order to authorize

5

disparate impact claims." *Garcia* Order at 9. Indeed, "[a]lthough the identical language found in the ADEA and Title VII was a basis for comparison in *Smith*, the *Smith* decision does not reach so far as to prohibit disparate-impact claims under other statutes that do not contain this same language; nor does it set forth a new test for determining whether a statute supports disparate-impact claims." *Zamudio*, 2008 WL 517138, at *2; *see also Beaulialice*, 2007 WL 744646, at *4 (concluding that *Smith* does not prohibit disparate impact claims under the FHA or ECOA).

Thus, GreenPoint has not met its burden of demonstrating that *Smith* is "clearly irreconcilable" with Ninth Circuit precedent holding that disparate impact claims are cognizable under the FHA and ECOA. *Miller v. Gammie*, 335 F.3d at 900. Accordingly, the Court DENIES the portion of GreenPoint's motion to dismiss based on this argument.

## II.   Whether Plaintiffs Have Adequately Alleged a Disparate Impact Claim

To prevail on a disparate impact claim, a plaintiff must show "a significant disparate impact on a protected class caused by a specific, identified . . . practice or selection criterion." *Stout v. Potter*, 276, F.3d 1118, 1121 (9th Cir. 2002).[1] GreenPoint argues that Plaintiffs have failed to state a disparate impact claim because they have failed to identify a specific policy or practice and also failed to allege a disparate impact on a protected class. The Court addresses each argument in turn below.

### A.   Specific Policy or Practice

GreenPoint first argues that Plaintiffs have failed to identify a specific policy or practice and that, instead, Plaintiffs "are simply attacking the cumulative effects of pricing by thousands of independent brokers." Mot. at 7. However, Plaintiffs clearly allege that GreenPoint "designed, disseminated, controlled, [and] implemented" the Discretionary Pricing Policy that forms the basis of the allegations in this case. FAC ¶ 50. The policy

---

[1] Although *Stout* was an employment discrimination case, the parties do not dispute that courts look to employment discrimination jurisprudence when interpreting claims under the FHA and ECOA. *E.g., Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213, 214 (1st Cir. 2000) (ECOA); *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (FHA).

allegedly allowed GreenPoint's loan officers and brokers to charge additional fees based on subjective criteria rather than objective criteria related to creditworthiness, and GreenPoint "communicated the . . . authorized discretionary charges to its loan officers and brokers via regularly published 'rate sheets.'" *Id.* ¶ 44.

The Supreme Court has squarely held that "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991 (1988). Although challenging subjective practices does not relieve a plaintiff from identifying a specific policy or practice that allegedly results in a disparate impact, Plaintiffs have adequately identified a specific policy in the Discretionary Pricing Policy. In doing so, they have singled out the subjective portion of a lending policy that allegedly relies on both subjective and objective criteria, and they need do no more to meet the "specific policy or practice" requirement for stating a disparate impact claim. As another district court ruled in a case involving similar allegations:

> Plaintiff does not challenge the overall process by which Defendants determine borrowers' rates and fees. Instead, Plaintiff challenges only the practice of allowing and incentivizing individual loan originators to assess additional, non-risk-based fees. In the context of a motion to dismiss, this is sufficient to give Defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'

*Garcia* Order at 15 (citations omitted); *see also Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424-25 (9th Cir. 1990) (holding that an employer's "policy of committing employment decisions to the subjective discretion of its managers is a specific employment practice subject to a disparate impact analysis").[2] Accordingly, this Court finds that Plaintiffs have adequately identified a specific policy for purposes of stating a disparate impact claim.

---

[2] Plaintiffs also find support from similar cases involving auto loans. For example, although the court in *Jones v. Ford Motor Credit Co.* did not address whether plaintiffs had identified a specific policy or practice, it nonetheless concluded that plaintiffs sufficiently stated a disparate impact claim under ECOA based on allegations that defendant had "a policy authorizing car dealers who enter into retail installment contracts [issued by defendant] with customers to subjectively mark-up an otherwise objective risk-based finance charge rate," and that this policy had a discriminatory impact against African-Americans. No. 00 CIV. 8330 (LMM), 2002 WL 88431, at *1, *4 (S.D.N.Y. Jan. 22, 2002).

7

### B.     Disparate Impact on a Protected Class

The Court also rejects GreenPoint's argument that Plaintiffs have failed to allege a disparate impact on a protected class because they do not allege that minority borrowers were given more unfavorable loans from GreenPoint than similarly situated white borrowers. While it is true that the complaint refers to statistical data from "other mortgage companies that use credit-pricing systems structured like that of GREENPOINT," the complaint also alleges that GreenPoint's Discretionary Pricing Policy "has a disproportionately adverse effect on minority borrowers compared to similarly-situated whites in that minority borrowers pay disparately more discretionary charges (both in frequency and amount) than similarly-situated whites." *Id.* ¶ 48. Plaintiffs further allege that Home Mortgage Disclosure Act ("HMDA") data from the federal government shows that "minorities who borrowed from GREENPOINT between 2004 and 2006 are almost 50% more likely than white borrowers to have received a high-APR loan to purchase or refinance their home," and that, "[w]hile credit differences may explain some part of the disparities in rate and terms, GREENPOINT's Discretionary Pricing Policy accounts for a significant portion of the disparity." *Id.* ¶¶ 35-36. In addition, the complaint alleges that the individually named plaintiffs "were subject to the Defendant's Discretionary Pricing Policy" and "were charged a disproportionately greater amount in non-risk-related credit charges than similarly-situated white persons." *Id.* ¶¶ 63-64, 73-74. Such allegations are sufficient to allege a disparate impact of the Discretionary Pricing Policy on minority borrowers as compared to white borrowers with similar credit risks. Consequently, the Court DENIES GreenPoint's motion to dismiss on grounds that Plaintiffs have failed to allege a disparate impact claim.

### III.    Whether the Ramirez Plaintiffs' Claims Are Time-Barred

Finally, GreenPoint argues that the Ramirez Plaintiffs' claims are barred by the two-year statute of limitations under the FHA and ECOA. *See* 15 U.S.C. § 1691e(f) (two-year statute of limitations under ECOA); 42 U.S.C. § 3613(a)(1)(A) (two-year statute of limitations under the FHA). Plaintiffs do not dispute that the complaint was filed more than

8

1 two years after the Ramirezes allegedly obtained their loan from GreenPoint on August 3,
2 2005. Instead, Plaintiffs argue that the statute of limitations was tolled by the so-called
3 "discovery rule" under which the limitations period does not begin to run until the plaintiff
4 "knows or has reason to know of the injury which is the basis of his action," *Cline v. Brusett*,
5 661 F.2d 108, 110 (9th Cir. 1981); the continuing violation doctrine; and GreenPoint's
6 fraudulent concealment of operative facts. The Court finds Plaintiffs' continuing violation
7 argument to be persuasive and therefore need not and does not reach Plaintiffs' alternate
8 theories for tolling the statute of limitations.[3]

9       In *Havens Realty Corporation v. Coleman*, the Supreme Court held that the
10 continuing violation doctrine applied to allegations that a defendant was engaged in a
11 practice of discrimination when it turned down apartment rental applications from African-
12 Americans, and that therefore the statute of limitations under the FHA did not bar claims
13 based on four incidents that occurred outside the limitations period. 455 U.S. 363, 380-81
14 (1982). The Court explained that a continuing violation of the FHA "should be treated
15 differently from one discrete act of discrimination. Statutes of limitations . . . are intended to
16 keep stale claims out of the courts. Where the challenged violation is a continuing one, the
17 staleness concern disappears." *Id.* at 380 (citations omitted). A "wooden" application of a
18 statute of limitations that "ignores the continuing nature of the alleged violation" would only
19 "undermine[] the broad remedial intent of Congress embodied in the Act." *Id.* As a result,
20 the Court concluded that where, as in this case, "a plaintiff, pursuant to the Fair Housing Act,
21 challenges not just one incident of conduct violative of the Act, but an unlawful practice that
22 continues into the limitations period, the complaint is timely when it is filed within [the
23 statutory limit] of the last asserted occurrence of that practice." *Id.* at 380-81 (footnote
24 omitted). Thus, the Ramirez Plaintiffs' claims are timely under *Havens*.

---

26     [3]The Court notes, however, that neither party sufficiently briefed the issue of whether the discovery rule applies to claims under the FHA and ECOA. GreenPoint simply noted in a single sentence *in its reply brief* that at least one court has held that the discovery rule does not apply to ECOA claims. *Archer v. Nissan Motor Acceptance Corp.*, No. Civ. A. 3:03CV906DPJJ, 2007 WL 2580321, at *1-4 (S.D. Miss. Sept. 4, 2007).

9

The Supreme Court later held that discrete acts of employment discrimination, "such as termination, failure to promote, denial of transfer, or refusal to hire," are not subject to the continuing violation doctrine, but that the continuing violation doctrine does apply to hostile work environment claims because "the entire hostile work environment encompasses a single unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-18 (2002). However, *Morgan* was a Title VII case that did not address claims under the FHA or even discuss, let alone modify, the rule established for such claims by *Havens*. In addition, the allegations in this case are, in any event, "more analogous to the hostile work environment claims than discrete discriminatory acts. . . . The ongoing discrimination plaintiffs allege could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching pattern to light." *Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 705-06 (N.D. Miss. 2005) (applying continuing violation doctrine to ECOA claims alleging racially discriminatory mark-ups on auto loans). Although each loan origination could be seen as a separate violation of the FHA and ECOA, this does not mean that the continuing violation doctrine does not apply. As another court in this district persuasively explained in a recent case:

> a single incident of "steering" constitutes an actionable violation of the FHA, just as the construction of each complex constitutes an actionable violation of the FHA. That more than one incident of steering occurred only demonstrates a *pattern* of such violations, not that each incident, standing on its own, is not a violation of the FHA. Defendants have offered no intelligible argument as to why the reasoning of *Havens* is not applicable to an alleged pattern or practice of construction-based violations of the FHA.

*Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, — F. Supp. 2d —, No. 07-3255 SBA, 2008 WL 927711, at *6 (N.D. Cal. Apr. 4, 2008).

This Court reaches the same conclusion in this case. GreenPoint has failed to persuade the Court that the continuing violation doctrine as applied in *Havens* does not apply here, and the Court therefore DENIES GreenPoint's motion to dismiss the Ramirez Plaintiffs' claims as time-barred.

10

**CONCLUSION**

In short, Plaintiffs have adequately alleged a disparate impact claim, and such claims are cognizable under the FHA and ECOA. In addition, the Ramirez Plaintiffs' claims are timely under the continuing violation doctrine. For all of the reasons discussed above, the Court therefore DENIES GreenPoint's motion to dismiss the first amended complaint.

This case is also currently scheduled for a case management conference on May 19, 2008, at 10:00 AM. That conference is hereby rescheduled for the same date at 1:30 PM.

**IT IS SO ORDERED.**

Dated: 05/13/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT